IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____
EVENTIDE CREDIT ACQUISITIONS, LLC, :
                                   :
   *Plaintiff*,                    :
                                   :
      v.                       :
                                   :
BIG PICTURE LOANS, LLC,            :
ASCENSION TECHNOLOGIES, LLC,       :
and TRIBAL ECONOMIC DEVELOPMENT    :
HOLDINGS, LLC,                     :
                                   :
   *Defendants*.                   :
_____

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

Eventide Credit Acquisitions, LLC ("Eventide" or "Plaintiff") brings this Complaint for Injunctive Relief against Big Picture Loans, LLC ("Big Picture"), Ascension Technologies, LLC ("Ascension"), and Tribal Economic Development Holdings, LLC ("TED") (together, "Defendants"), and alleges in support as follows:

## PRELIMINARY STATEMENT

1.    Big Picture and Ascension are defendants in several class-action litigations pending in the United States District Courts for the Districts of Oregon, Massachusetts, and the Eastern District of Virginia. They have sought to resolve those litigations by way of a settlement with the putative consumer classes that brought suit against them in those districts. Ex. 1 (the "Settlement Agreement").

2.    Notwithstanding the commendable goal of settling litigations and conserving judicial resources, the problem with the Settlement Agreement Big Picture and Ascension

1

have reached with the Plaintiffs is that the agreement contravenes the pre-existing contractual obligations those companies and their corporate parent have to Eventide.

3. Big Picture and Ascension's conduct has forced Eventide to declare Big Picture's and Ascension's parent company, TED, a wholly owned subsidiary of the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("LVD"), in default of their contract. *See* Ex. 2 (Eventide's Notice of Default).

4. As outlined further below, one of the same contracts that TED and LVD have defaulted upon mandates certain dispute-resolution procedures be followed in the event of default, including the pursuit of relief in the event of a default by way of arbitration. *See* Ex. 3, (Loan and Security Agreement).

5. On December 13, 2019, LVD, TED, Big Picture, and Ascension sent a letter purporting to be a Notice of Arbitration to Eventide. *See* Ex. 4 (Notice of Arbitration).

6. On December 16, 2019, Eventide filed with the American Arbitration Association ("AAA") a Demand for Arbitration against LVD, TED, Big Picture, and Ascension in an effort to determine the extent to which those companies are in breach of their contractual obligations to Eventide. Ex. 5.

7. The contract that governs the parties' contractual relationship and their right to resolve disputes via binding arbitration before the AAA, the Loan and Security Agreement ("LSA") also provides that either party may seek "fast-track injunctive relief" from this Court "to prevent actions by the other Party which could have a Material Adverse

2

Effect if taken," with the injunction being "to maintain the status quo during the Dispute Resolution process" mandated by the contract. Ex. 3 at ¶ 8.5(e).

8. The Settlement Agreement, if entered, will have a "Material Adverse Effect," as defined below. Eventide therefore requests the Court temporarily enjoin Big Picture, Ascension, and their parent company TED, from entering into the Settlement Agreement pending the outcome of the arbitration in accordance with the contractual dispute resolution process. Absent such immediate injunctive relief, Big Picture, Ascension, and TED are likely to formalize the Settlement Agreement in a hearing in the Eastern District of Virginia on Friday, December 20, 2019.

9. Additionally, Eventide reasonably believes that Big Picture, Ascension, and/or TED have, may be in the process of, or may soon take certain actions outside the ordinary course of conducting their lending business that would constitute further Material Adverse Events above and beyond those listed below and in Eventide's Notice of Default. Ex. 2. Eventide therefore further requests the Court to issue an injunction in the manner provided in Section 8.5(e) of the contract, directing that Defendants may not take any actions that would be Material Adverse Effects.

10. Specifically, Eventide has received information that Big Picture, Ascension, and/or TED are or are about to take a number of non-ordinary-course actions in the conduct of their business, are or are about to make abnormal monetary transactions, are in the process of attempting to open new bank accounts, and/or are in the process of changing

their loan management system. Such actions, should they occur, will deprive Eventide of the contractual protections provided to it under the terms of the contract.

## JURISDICTION AND VENUE

11. This court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because, as set forth below, Eventide is a citizen of a different state than each Defendant and their respective members, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. Venue is proper in this district under 28 U.S.C. § 1391(b) because the parties agreed in Section 8.2 and 8.5(e) of the LSA to submit to the venue and jurisdiction to this Court.

## PARTIES

13. Plaintiff Eventide is a limited liability company organized under the laws of the State of Delaware and having its principal place of business in Dallas, Texas.

14. Defendant Big Picture is a limited liability company wholly owned as a subsidiary by TED, organized under LVD tribal law, and having its principal place of business on the tribe's reservation in Watersmeet, MI. TED is BPL's sole member.

15. Defendant Ascension is a limited liability company wholly owned as a subsidiary by TED, organized under LVD tribal law, and having its principal place of business in either Watersmeet, MI, or Atlanta, Georgia. TED is Ascension's sole member.

16. Defendant TED is a limited liability company wholly owned and operated by LVD, organized under LVD tribal law, and having its principal place of business in Watersmeet, MI. LVD is TED's sole member.

## FACTS

17. LVD runs a tribal lending business. It owns Big Picture and Ascension as wholly owned subsidiaries of a holding company, TED, which is itself a wholly owned and operated economic arm and instrumentality of LVD. LVD is a federally recognized Native American tribe.

18. Big Picture is a lender, making small-dollar installment loans to consumers pursuant to LVD's consumer lending laws. Big Picture originates and collects the consumer loans from its office on LVD's reservation in Watersmeet, MI.

19. Ascension is LVD's analytics company, which assists Big Picture's lending business as a consultant.

20. While LVD has always owned its lending business, it bought the consulting company (previously Bellicose Capital, and its subsidiary Sourcepoint, VI) in a seller-financed transaction in January 2016.

21. As described in the transaction documents, Eventide effectively transferred the assets and liabilities of Bellicose Capital to LVD in return for a secured promissory note from LVD.  As part of the transaction, LVD merged Bellicose Capital with Tribal

Acquisition Company, LLC ("TAC")—a Delaware LLC formed by LVD for the purpose of effectuating the sale transaction.

22. After LVD merged Bellicose Capital into TAC, LVD subsequently transferred the assets of Bellicose Capital to TED, and then wound-up TAC. Since the transfer, TED has served as the parent company for LVD's lending company (Big Picture) and its consulting/analytics business used to support the lender (Ascension).

23. Because of the seller-financed nature of the transaction, LVD (through TED) committed to make contractually required payments (i.e., distributions) to Eventide for a seven-year period, after which the remaining debt on the note would be retired and LVD would own the consulting business free and clear of any obligations to its creditor, Eventide.

24. The payments required to be made to Eventide are variable and determined based upon a contractual waterfall that was advantageous to LVD's interests. Because these waterfall payments to Eventide varied based upon TED's overall profitability, TED agreed that it owes a fiduciary duty to Eventide to maximize note payments.

25. As part of the sale, TED, Big Picture, and Ascension further entered into a Loan Security Agreement ("LSA") with Eventide. *See* Ex. 3.

26. The LSA provided Eventide certain creditor's rights with respect to the collateral in the event of a default.

27. As more fully laid out in the attached notice letter sent by Eventide to LVD on December 12, 2019, Ex. 2, LVD and its subsidiaries have materially defaulted on their obligations to Eventide in a panoply of ways.

28. In the event of a dispute between the parties, including any dispute arising from an event of default, the parties, via the LSA, agreed to a detailed framework for resolving any dispute outside of court.

29. Specifically Section 8.5 of the LSA provides that "in the event that either Party to this Agreement believes that the other Party has failed to comply with any requirement of this Agreement or a Transaction Document, or in the event of any dispute hereunder, including, but not limited to, a dispute over the proper interpretation of the terms and conditions of this Agreement," the Dispute Resolution procedures are to be followed. Ex. 3, at § 8.5.

30. The first step requires notifying the other party of the non-compliance in writing and then seeking to "resolve all disputes amicably and voluntarily whenever possible." *Id.* at § 8.5(a).

31. Eventide gave written notice to LVD of its many defaults on December 12, 2019. *See* Ex. 2.

32. Instead of recognizing and owning up to their defaults, Defendants served on Eventide a letter purporting to be Notice of Arbitration on December 13, 2019. Ex. 4.

Defendants did not, however, initiate an arbitration with the AAA as required by the LSA. Ex. 3, at § 8.5(b).

33. Eventide responded on December 16, 2019, by filing with the AAA a formal Demand for Arbitration against LVD, TED, Big Picture, Ascension, and TAC.

34. The LSA provides, "[i]f the dispute centers around an action of a Party, such action *shall be* postponed or discontinued during the pendency of the arbitration, provided that the lack of action shall not have a negative impact to the economic value of a Party." *Id.* (emphasis added).

35. Big Picture, Ascension, and TED are parties and signatories to the LSA.

36. LVD, including TED, Big Picture, and Ascension, have refused to cease the offending actions despite their contractual responsibility to do so.

37. Among the defaults Big Picture and Ascension refuse to cease is their entry into the Settlement Agreement, presently pending preliminary approval by Eastern District of Virginia Senior District Judge Robert E. Payne (with a scheduled hearing on December 20, 2019) under the caption *Galloway, et al. v. Williams Jr., et al.*, Civ. A. No. 3:19-cv-00470-REP (E.D.Va.).

38. Based upon filings with the court in the *Galloway v. Williams* case, the Settlement Agreement will resolve all putative consumer class claims in all cases against Big Picture and Ascension in Virginia, Oregon, and Massachusetts.

39. The terms of the Settlement Agreement will have a severely negative economic impact on Eventide and violate a host of LVD's, TED's, Big Picture's, and Ascension's contractual duties under the LSA.

40. The Settlement Agreement, if entered, will cause immediate irreparable harm to Eventide.

41. A non-exhaustive listing of material defaults that would be occasioned by entry of the Settlement Agreement is contained in Eventide's December 12, 2019 letter to LVD's General Counsel, Karrie Wichtman, providing notice of those defaults. *See* Ex. 2, at 10-12.

42. Among those defaults is Big Picture's agreement in the Settlement Agreement to collect no more than 2.5 times the original principal amount of certain outstanding loans. Under the LSA, Big Picture's loans serve as collateral for Eventide. This term of the Settlement Agreement would, therefore, have the impact of significantly diminishing the value of the collateral (Eventide reasonably believes this term will cause a loss to Eventide of more than $10 million). Ex. 1, at ¶ 11.2. This violates Section 3.10 of the LSA, which provides, "The Collateral is valid and genuine in all respects. Except as to claims by a Senior Lender, Borrower and each Subsidiary will warrant and defend Lender's right to and interest in the Collateral against all claims and demands of all persons whatsoever." Ex. 3, at § 3.10.

43. Section 3.11 of the LSA obligates LVD to defend Eventide, to hold Eventide harmless, and to indemnify in respect to any claim or proceeding pertaining to the correctness, genuineness, or validity of its collateral, or for the value or character of the

9

collateral, including to any consumer or any third party. Ex. 3, at § 3.11. Execution of the Settlement Agreement would violate these obligations to Eventide, along with numerous other indemnity and duty to defend obligations in the sale documents.

44. Section 3.13 of the LSA provides, "[f]unds received under this Agreement may only be used for the acquisition of Bellicose Capital, LLC by [Tribal Acquisition Company, LLC], and [Eventide] and/or Subsidiary shall receive good and valuable consideration in connection with such acquisition." Ex. 3, at § 3.13. Contrary to this obligation, Big Picture and Ascension have agreed in the Settlement Agreement to pay $8.7 million—funds that would otherwise be required to be paid to Eventide—to the various groups of plaintiffs. The use of those funds to pay plaintiffs is a clear and material violation of Section 3.13 of the LSA.

45. Section 4.18 of the LSA provides that "The Collateral and each item thereof will be and shall continue to be free of all restrictions, liens, encumbrances or other rights, title or interests, credits, defenses, recoupments, set-offs or counterclaims whatsoever, other than the security interests granted to Lender hereby and the Permitted Liens … Borrower and each Subsidiary will warrant and defend Lender's right to and interest in the Collateral acquired against all claims and demands of all persons whatsoever." Ex. 3, at § 4.18. The Settlement Agreement's provision to not collect more than 2.5 times on the collateral is an impermissible restriction that impairs Eventide's ability to collect on its note.

46. Section 4.4 of the LSA provides that LVD and its subsidiaries shall only use the collateral for the benefit of TED and its subsidiaries, Big Picture and Ascension, and to

10

meet their fiduciary obligations to Eventide under the LSA. Ex. 3, at § 4.4. The use of ECA's cash collateral to make payment to plaintiffs, and the use of ECA's non-cash collateral to implement a 2.5 times restriction on consumer loans for the benefit of the borrower under the Settlement Agreement violates Section 4.4 of the LSA.

47. Section 5.2 of the LSA provides that there shall be no sale or transfer of ownership of any interest, whether direct or indirect, in Borrower or any subsidiary, i.e, Big Picture or Ascension, without Eventide's written consent, unless Eventide is paid in full for all obligations under the transaction documents in accordance with the provisions of the LSA. Payment to the plaintiffs and the agreement to the 2.5 times restriction on the collateral violates Section 5.2 of the LSA as an indirect sale of interest in the collateral.

48. Section 5.7 of the LSA provides that LVD and each subsidiary shall not sell, lease, "or otherwise dispose of any of its assets including the collateral." Ex. 3, at § 5.7. The disposition of ECA's cash collateral by means of the Settlement Agreement payments to plaintiffs and the obligation to devalue the existing outstanding consumer loans via the 2.5 times rate cap violates Section 5.7 of the LSA.

49. Section 6.1(j) provides that the occurrence of a Material Adverse Effect shall constitute a default. Ex. 3, at § 6.1(j). The Settlement Agreements payments to plaintiffs and the agreement to the 2.5 times rate cap each individually, and in the aggregate, constitute violations of Section 6.1(j) of the LSA.

50. Section 5(c) of the sale Note (Ex. 6) provides that any ordinary any necessary expenses not agreed to in Section 4 above and in excess of $25,000 per year, unless

otherwise agreed to by the Parties, shall be a non-deductible expense. *Id.* at § 5(c). The cost of a 2.5 times restriction on the collateral and the case payments contemplated by the Settlement Agreement, do not constitute "ordinary and necessary expenses" and are not deductible. This prospective and inevitable default of the Settlement Agreement's obligations in turn gives rise to a Material Adverse Effect under 6.1(j) of the LSA.

51. These Settlement Agreement based breaches could be and are individually, and in the aggregate, Material Adverse Effects under the LSA that must be enjoined.

52. These are not the only Material Adverse Effects that Eventide asks the Court to enjoin. As outlined in the Notice of Default (Ex. 2), Defendant's conduct (individually and in the aggregate) could and does constitutes a myriad of additional Material Adverse Effects that they must cease pending the arbitration procedures.

53. For example, Eventide reasonably believes that Defendants have, are in the process of, or are conducting non-ordinary-course business activities to Eventide's significant detriment, conducting certain improper monetary transfers, and/or opening certain additional bank accounts in a manner prohibited by the LSA.

54. Any such actions, should they occur, individually and in the aggregate, will constitute Material Adverse Effects under the LSA in that they will impermissibly and permanently restrict Eventide's ability to secure its collateral. Defendants' actions must be enjoined pending the arbitration on the merits in order to maintain the status quo.

55. LVD (i.e., Big Picture, Ascension, and TED) further agreed in the LSA to a procedure for fast-track injunctive relief pending the arbitration called for by the provisions outlined above.

56. Specifically, LSA Section 8.5(e) provides

> Fast-track Injunctive Relief. Either party may bring an original action in a court of competent jurisdiction pursuant to this Section 8 to prevent actions by the other Party which could have a Material Adverse Effect if taken. Such injunctive relief may only be taken to maintain the status quo during the Dispute Resolution process set forth in this Section 8.5.

Ex. 3, at § 8.5(e).

57. A Material Adverse Effect is, "with respect to Borrower, any event, occurrence, development, fact, condition[,] or change that individually or in the aggregate is or would be reasonably likely to be materially adverse to the operations or financial performance of Borrower or any of Borrower's subsidiaries." *Id.* at § 2.2.

58. Big Picture's and Ascension's entry into the Settlement Agreement and other serious breaches could (and do), individually and in the aggregate, constitute Material Adverse Effects under the LSA for the reasons outlined above.

## COUNT I—BREACH OF CONTRACT AND REQUEST FOR INJUNCTION PENDING DISPUTE RESOLUTION PROCESS PURSUANT TO SECTION 8.5(E) OF THE LSA

59. The allegations in all preceding paragraphs are incorporated herein by reference.

60. For the reasons outlined above and in Eventide's Demand for Arbitration (Ex. 5), Defendants are in material breach of their contractual obligations to Eventide.

61. Defendants triggered the contractual Dispute Resolution process (Ex. 3, at § 8) by their purported Notice of Arbitration (Ex. 4), and Eventide agrees that the breach claims both Defendants and Eventide have made should be decided on their merits by the arbitrator in the manner outlined in the contract. Eventide has accordingly filed with AAA the Demand for Arbitration. Ex. 5.

62. The Court should issue the temporary injunction agreed to by the parties in Section 8.5(e) of the LSA. Ex. 3, at § 8.5(e).

63. As outlined above and in Eventide's Notice of Default, Defendants are clearly taking actions that, individually and in the aggregate, <u>are</u> Materially Adverse Effects (all that is required for the injunctive relief sought here that they "could" constitute Materially Adverse Effects, Ex. 3, at § 8.5(e)).

64. That Defendants have expressly contracted for such injunctive relief should, by itself, end the inquiry; however, the ordinary factors considered in determining whether to grant such an injunction are also met:

   a. <u>Likelihood of success on the merits</u>: By the breaches outlined above and in the attached Demand for Arbitration (Ex. 5), Eventide has a strong likelihood of prevailing in the underlying arbitration. Defendants are in clear breach of the LSA and various other sale documents.

   b. <u>Irreparable harm</u>: If the Court does not enjoin Defendants and maintain the status quo pending arbitration, Eventide will be irreparably harmed.

      i. Defendants are acting in manners that threaten significant, irreversible harm to Eventide, including by proceeding with the contemplated Settlement Agreement. Eventide expects, based on required financial reporting Defendants make to Eventide of their financial performance that Defendants' income is shrinking, and particularly given the agreement to cap certain collections on the collateral at 2.5x principal, and in light of Defendant's past and present financial performance, that Defendants will (if the Settlement Agreement is entered) be unable to make monetary payments to Eventide, thereby

15

precluding the possibility of future recovery. Moreover, if the Settlement is approved, Eventide will forever be deprived of its right to stop such potential Material Adverse Effects related to that offending conduct before they happen under the bargained-for fast-track injunctive relief provision in Section 8.5 of the LSA. Ex. 3, at § 8.5(e). Eventide also believes that in the absence of injunctive relief, the parties would also not be able to have the bargained-for arbitration over defaults and/or Material Adverse Effects that are implicated by the terms of the settlement agreement given that the Eastern District of Virginia (the court overseeing the proposed settlement) could exercise jurisdiction to stop such a proceeding pursuant to the All-Writs Act. 28 U.S.C. § 1651.

ii. Additionally, to the extent that Defendants have, are, or may be planning to take certain non-ordinary-course actions with respect to the lending business, those too would be irreparable. Eventide reasonably believes that Defendants have or may soon take certain actions such as conducting monetary transfers, opening of new bank accounts, and/or changing loan-management software providers, in addition to other activities that will be to Eventide's significant detriment and may well preclude Eventide from the possibility of monetary recovery in

16

the future. These irreparable injuries would be avoided by the entry of temporary injunctive relief to ensure that Defendants continue to run the business appropriately, and to maintain the status quo, pending the arbitration.

c. <u>Balance of the harms</u>: Maintaining the status quo until the arbitration can be resolved will not result in substantial harm to any party. All Eventide seeks is that the arbitration, which Defendants themselves triggered, be promptly resolved before Defendants take any further Material Adverse Effects. By contrast, such further Material Adverse Effects will only (and substantially) harm Eventide. There is no urgency to Defendants' entry into the Settlement Agreement and they certainly will not be harmed by being prohibited from taking any of the other improper ongoing and/or future activities challenged by the Demand for Arbitration. This factor also weighs in favor of granting injunctive relief.

d. <u>Public Policy</u>: Public policy favors issuing the injunctive relief sought. It is a bedrock policy in the law both that that enforcement of contracts and arbitration are favored. All parties to this action are sophisticated business entities, and they contracted for the relief that is sought. To not enforce that contract by granting an injunction here would be to undermine the parties' legitimate business expectations

that the bargained-for arbitration provision be allowed to function as contemplated. Public policy weighs in favor of maintaining the status quo so that Eventide may resolve its claims in the arbitration and to enforce its rights under the pertinent contracts.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the Court enter judgment in its favor and against Defendants, and award the following relief:

A. Enter an order maintaining the status quo by preliminarily enjoining Defendants from entering the Settlement Agreement and forbidding Defendants from taking any other action outside of those required in the ordinary course of conducting their lending business in the same manner as under the status quo ante, pending the adjudication of the Dispute Resolution process;

B. award Plaintiff reasonable attorneys' fees under Section 8.6 of the LSA; and

C. grant any other relief the Court deems proper.

Respectfully submitted,

*/s/ Michelle L. Alamo*
Michelle L. Alamo P60684
ARMSTRONG TEASDALE LLP
4643 S. Ulster St., Ste. 800
Denver, CO 80237
p.: 720.722.7189
e.: malamo@atllp.com

                Richard L. Scheff (*admission pending*)
                ARMSTRONG TEASDALE LLP
                2005 Market Street, 29th Fl.
                Philadelphia, PA 19103
                p.: 267.780.2000
                e.: rlscheff@atllp.com

## VERIFICATION

I, Matthew Martorello, verify under penalty of perjury that I have read the above Complaint and its contents, and that to the best of my knowledge and recollection, the matters stated in the Complaint are true and correct.

Executed this 17th day of December, 2019.

_____
MATTHEW MARTORELLO